IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOSEPH FINOCCHIARO,<br><br>Plaintiff,<br><br>vs.<br><br>NUMBER FOUR, LLC, CHAD MCMAHON, and BURGER DETOUR, LLC,<br><br>Defendants. | **8:25CV463**<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Joseph Finocchiaro first filed this suit in the District Court of Douglas County, Nebraska. Filing 1-1 at 5. Defendants Burger Detour, LLC (Burger Detour), Number Four, LLC (Number Four), and Chad McMahon removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441. Filing 1. On August 15, 2025, Finocchiaro filed an Amended Complaint. Filing 18. This case is now before the Court on Defendants' Joint Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Filing 23. For the reasons stated below, Defendants' Joint Motion to Dismiss is granted in part and denied in part.

## I. INTRODUCTION

### A. Factual Background

Defendants' Joint Motion to Dismiss is premised on both a "facial" attack on subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and an attack on statement of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Filing 23 at 1; Filing 24 at 12–13. In either a "facial" attack on subject matter jurisdiction or an attack on statement of a claim, a court must look only at the pleadings and provide the same protections available under Federal Rule of Civil Procedure 12(b)(6). *See Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024) (stating standards for a "facial" challenge to subject matter jurisdiction pursuant to Rule 12(b)(1));

*Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (stating standards for failure to state a claim pursuant to Rule 12(b)(6)). Thus, the Court considers the following allegations alleged in the Amended Complaint as true—to the extent that they are nonconclusory—for the purposes of ruling on this Motion. *See Bauer*, 25 F.4th at 589 (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)).

This case involves two limited liability companies (LLCs): Burger Detour and Number Four. *See* Filing 18. "Burger Detour owns and, until recently, operated the Burger Detour fast food restaurants in Omaha, Nebraska." Filing 18 at 2 (¶ 8). According to "representations [purportedly] made by McMahon," Burger Detour owns 100% of the membership interest in the second LLC, Number Four. Filing 18 at 2 (¶ 11). Number Four "was formed to hold real estate assets for the Burger Detour restaurants." Filing 18 at 2 (¶ 11). Number Four allegedly "owns three parcels of real property and improvements." Filing 18 at 6 (¶ 38).

The suit also involves two individuals, Joseph Finocchiaro and Chad McMahon, that engaged in an investment relationship involving the two LLCs. Filing 18 at 1 (¶¶ 1, 4). McMahon, the alleged "manager" of Burger Detour, approached Finocchiaro in "early 2022" to solicit an investment. *See* Filing 18 at 2 (¶¶ 12–14). According to Finocchiaro, "McMahon presented Finocchiaro with a document entitled 'Investor's Agreement' in which Finocchiaro would purchase a 40% interest in Burger Detour for a purchase price of $1,416,759." Filing 18 at 2 (¶ 13). However, Finocchiaro alleges the deal was mutually understood to convey more than a 40% interest in Burger Detour. Filing 18 at 2 (¶ 14). Finocchiaro alleges McMahon represented that Finocchiaro's contributions would secure both a "40% ownership stake in Burger Detour, and by extension, an effective 40% ownership interest in Number Four and the Properties." Filing 18 at 2 (¶ 14).

On January 19, 2025, Finocchiaro allegedly "inquired into the entities' ownership structure and the titling of the Properties." Filing 18 at 4 (¶ 22). During a conversation with McMahon on that date, Finocchiaro allegedly stated, "Land, buildings, equipment, I would get 40%, you would get 60% . . . the contract states 40/60. It's right there." Filing 18 at 4 (¶ 23). According to Finocchiaro, "McMahon responded 'Correct.'" Filing 18 at 4 (¶ 23). Finocchiaro then purportedly stated, "So, as of right now . . . I am still 40% [owner] of all the land, all the buildings, all the equipment, the businesses, everything." Filing 18 at 4 (¶ 26). According to Finocchiaro, McMahon responded, "Under Burger Detour, LLC, correct." Filing 18 at 4 (¶ 26). Finocchiaro then allegedly asked, "Is our land in Burger Detour?" Filing 18 at 5 (¶ 27). McMahon purportedly answered, "Burger Detour owns the rights to all of it." Filing 18 at 5 (¶ 27). According to Finocchiaro, McMahon further represented that "all the LLCs are owned by Burger Detour." Filing 18 at 5 (¶ 28).

Finocchiaro alleges that he discussed his interests further with McMahon on or about February 16, 2025. Filing 18 at 5 (¶ 29). On that date, McMahon allegedly stated in a text message to Finocchiaro that "he would 'try to at least have [Finocchiaro's] 40% after ALL debt paid off[.]'" Filing 18 at 5 (¶ 29). According to Finocchiaro, "This representation explicitly affirmed Finocchiaro's 40% ownership interest in the business entities and assets, including the Properties held by Number Four, and was made to induce further contributions despite McMahon's knowledge that such representations were false." Filing 18 at 5 (¶ 29). Finocchiaro also alleges that "McMahon stated he was '[doing] all I can to keep [you] at 40% so [you] can thrive so keep grinding all [you] can'" in a separate text message. Filing 18 at 5 (¶ 30). According to Finocchiaro, "This further reinforced Finocchiaro's 40% stake in the overall operation, including Number Four,

and was false or reckless, as McMahon intended to use such funds for his personal benefit without honoring Finocchiaro's ownership." Filing 18 at 5 (¶ 30).

The "$1,416,759 purchase price" enumerated in the Investor's Agreement was not the only money Finocchiaro allegedly contributed. Filing 18 at 3 (¶¶ 16–17). Finocchiaro alleges, "McMahon continued to seek capital contributions from Finocchiaro over and above the $1,416,759 purchase price every month from January 2022 – May 2025." Filing 18 at 8 (¶ 16). He alleges that "in reliance on McMahon's false representations" that Finocchiaro was a 40% owner in Burger Detour's operations, Finocchiaro "contributed millions of dollars to the business, and to McMahon personally." Filing 18 at 3 (¶ 17). Finocchiaro alleges that he "contributed more than $7,000,000 to Defendants" over a period of 41 months, which included $3,541,881.00 to Burger Detour, $3,170,518.00 to Chad McMahon personally (including $2,000,000 in cash for purported operational expenses), and $1,360,350.00 to Number Four.[1] Filing 18 at 3 (¶ 19).

Finocchiaro alleges that McMahon represented to him that "such funds were needed for operations, to make payroll, and to pay down debt." Filing 18 at 3–4 (¶ 20). Finocchiaro alleges that he intended the funds he contributed "to be used for acquiring and improving the Properties and operating the businesses." Filing 18 at 5 (¶ 33). Finocchiaro also alleges that he "believed that McMahon was contributing his pro rata share of the capital to operate the business and pay down debt." Filing 18 at 6 (¶ 34).

However, Finocchiaro alleges that McMahon misled him as to both his membership interests and how his contributions were being used. *See* Filing 18 at 4, 6–7 (¶¶ 21, 41–42). Relating to Finocchiaro's contributions, McMahon purportedly "usurp[ed] hundreds of thousands

[1] Finocchiaro also alleges $160,105.00 was contributed to "a related entity," CF Division. Filing 18 at 2 (¶ 19). Finocchiaro does not allege what relationship, if any, CF Division, a non-defendant, has to the case. Filing 18.

of dollars from the business (presumably Finocchiaro's capital contributions) to fund his lavish lifestyle, including private planes to Vegas, $10,000 withdrawals from local casinos, payments to his daughters' private school, payment to several credit cards not believed to be related to the business, designer purses, Shadow Ridge Country Club tabs, and other[] [extravagances]." Filing 18 at 4 (¶ 21). Regarding Finocchiaro's membership interests, Defendants' Corporate Disclosure Statement for Number Four shows that "Finocchiaro has no membership and/or ownership interest in Number Four." Filing 18 at 6–7 (¶¶ 41–42) (citing Filing 15).

With respect to Burger Detour specifically, Finocchiaro details that he contributed over $5,200,000, which presumably includes the $2,000,000 contributed to McMahon personally for purported operational expense. Filing 18 at 3, 7 (¶¶ 19, 45). According to Finocchiaro, however, McMahon has not provided any information to Finocchiaro regarding how much McMahon contributed to Burger Detour. Filing 18 at 7 (¶ 46). Finocchiaro has also allegedly made demands for Burger Detour's Operating Agreement, corporate documents, and other books and records. Filing 18 at 7 (¶ 47). According to Finocchiaro, "McMahon has refused to provide these books and records" and the K-1s for 2022, 2023, or 2024. Filing 18 at 7 (¶¶ 48–49). Further, Finocchiaro alleges McMahon has taken distributions in excess of $1,500,000 from Burger Detour and has not made any corresponding distributions to Finocchiaro. Filing 18 at 7 (¶ 50). According to Finocchiaro, "When [he] asked what happened to the more than $2,000,000 in cash that he contributed to Defendants, McMahon simply responded that it was 'gone.'" Filing 18 at 7 (¶ 51).

Relating to Number Four, Finocchiaro alleges he "made payments directly to Number Four in an amount exceeding $1,300,000 upon the assurances by McMahon that it would be used to purchase land and improvements for the operation of the Burger Detour stores." Filing 18 at 6 (¶ 39). He alleges, "In making these payments, McMahon represented to Finocchiaro that he was

a 40% owner of Number Four because it was owned by Burger Detour." Filing 18 at 6 (¶ 40). Finocchiaro alleges that he would not have contributed the funds had it not been for the misrepresentations. Filing 18 at 5 (¶ 32). Despite the representations made by McMahon, Defendants' Corporate Disclosure Statement for Number Four shows "that Finocchiaro has no membership and/or ownership interest in Number Four, LLC, confirming that representations to the contrary were knowingly false when made." Filing 18 at 6–7 (¶¶ 41–42). According to Finocchiaro, "[he] recently learned that Number Four has listed the Properties for sale" even though he "has not consented to the sale of the Properties." Filing 18 at 7 (¶¶ 43–44).

**B. Procedural Background**

On June 11, 2025, Finocchiaro filed a complaint in the District Court of Douglas County, Nebraska. Filing 1–1 at 5. Defendants Burger Detour, Number Four, and Chad McMahon removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441 on July 18, 2025. Filing 1. On July 25, 2025, Defendants filed a Joint Motion to Dismiss "pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the pleading requirements of the Private Litigation Securities Reform Act of 1995 on the grounds that Plaintiff has failed to plead his claims with sufficient particularity and has failed to state a claim upon which relief can be granted." Filing 5 at 1 (internal citations omitted). On August 15, 2025, Finocchiaro filed an Amended Complaint. Filing 18. Defendants' Joint Motion to Dismiss was "denied without prejudice to reassertion as to Plaintiff's Amended Complaint" on August 19, 2025. Filing 21. Defendants filed another Joint Motion to Dismiss, which is the Motion now before the Court, and a brief in support of that Motion on August 29, 2025. Filing 23; Filing 24. Finocchiaro filed a brief in opposition to the Joint Motion to Dismiss on September 19, 2025. Filing 27. Defendants filed a reply brief in support of the Joint Motion to Dismiss on September 26, 2025. Filing 28.

Finocchiaro asserts eight causes of action in the Amended Complaint. Filing 18. Finocchiaro's first cause of action seeks "[e]quitable relief in the form of a court-ordered accounting." Filing 18 at 7–8 (¶¶ 52–58). Finocchiaro pleads fraud for his second cause of action. Filing 18 at 8–9 (¶¶ 59–66). Third, Finocchiaro alleges "violations of 15 U.S.C. § 77 and Section 10(b) of the Securities Exchange Act of 1934." Filing 18 at 9–10 (¶¶ 67–71). Fourth, he pleads a violation of the Nebraska Securities Act. Filing 18 at 10–11 (¶¶ 72–76). Finocchiaro seeks a declaratory judgment in his fifth cause of action. Filing 18 at 11 (¶¶ 77–83). Sixth, Finocchiaro alleges conversion. Filing 18 at 12 (¶¶ 84-87). Seventh, Finocchiaro pleads Defendants engaged in a conspiracy. Filing 18 at 12–13 (¶¶ 88–91). Eighth, Finocchiaro maintains that Defendants violated the Nebraska Uniform Limited Liability Company Act. Filing 18 at 13 (¶¶ 92–95).

## II. LEGAL ANALYSIS

Defendants' Motion seeks dismissal of certain claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail as a matter of law.[2] Filing 24 at 1–2. Defendants also argue that the Amended Complaint must be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) because Finocchiaro "does not have standing to assert the claims." Filing 24 at 2. The Court considers Defendants' second argument first because federal courts must ensure jurisdiction is proper prior to weighing the merits, and standing is a requirement of subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and

[2] Defendants' Joint Motion to Dismiss Finocchiaro's initial complaint challenged Finocchiaro's fraud claim on the ground that it was not pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b). Filing 6 at 2–4. Defendants' Joint Motion to Dismiss the Amended Complaint does not reassert the Rule 9(b) challenge against the Amended Complaint's fraud claim. Filing 24.

dismissing the cause." (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)); *Quiles v. Union Pac. R.R. Co.*, 4 F.4th 598, 603 (8th Cir. 2021) (citing *Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*, 424 F.3d 840, 843 (8th Cir. 2005)) ("Establishing subject matter jurisdiction requires a party to show it has standing to sue.").

## A. Finocchiaro Does Not Have Standing to Allege Six of the Amended Complaint's Claims

### 1. *Rule 12(b)(1) Standards*

Federal Rule of Civil Procedure 12(b)(1) provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The plaintiff bears the burden of establishing subject matter jurisdiction." *Hilger v. United States*, 87 F.4th 897, 899 (8th Cir. 2023) (citing *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)). "When considering a motion under Rule 12(b)(1), a court is to consider whether a party is asserting a 'facial attack' or a 'factual attack' on jurisdiction." *Smith*, 106 F.4th at 813 (citing *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)). "The method in which the district court resolves a Rule 12(b)(1) motion . . . obliges [the Circuit Court of Appeals] to follow the same approach." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024) (quoting *Carlsen*, 833 F.3d at 908).

"If [a Rule 12(b)(1) motion] is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." *Smith*, 106 F.4th at 813. According to the Eighth Circuit Court of Appeals, district courts "afford[ ] [the Plaintiff's] complaint Rule 12(b)(6) protection by accepting as true all facts alleged in the complaint." *Carlsen*, 833 F.3d at 908 (internal quotation marks and citations omitted). However, the Court may consider "materials that are necessarily embraced by the pleadings" when considering a facial challenge. *Id.* (internal quotation marks and citations omitted). This is because "documents

necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). Such additional materials can still be considered even when they contradict certain allegations in the complaint. *See, e.g.*, *Meardon v. Register*, 994 F.3d 927, 935 (8th Cir. 2021) (explaining that "[b]ecause [a written contract's] contents contradict the pleadings and defeat Plaintiffs' annuity-related contract claim, we agree with the district court that the annuity-related contract claim must be dismissed."), *reh'g denied* (May 26, 2021); *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (concluding the court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence"). Thus, "to survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing." *Hawse v. Page*, 7 F.4th 685, 689–90 (8th Cir. 2021).

On the other hand, "[a] factual attack occurs 'when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction.'" *Davis v. Anthony*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)); *see also Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) ("In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments."). The Eighth Circuit has described the operation of a factual challenge, saying,

> "When the moving party makes a factual attack on the court's subject-matter jurisdiction, ... the district court may look outside the pleadings and weigh evidence." *Two Eagle [v. United States]*, 57 F.4th [616,] 620 [(8th Cir. 2023)]. "We review the district court's resolution of factual disputes for clear error and its decision on whether it lacks subject-matter jurisdiction de novo." *Id.*

*Hilger*, 87 F.4th at 899.

Defendants do not expressly commit to a facial or a factual attack in their opening brief and only suggest that the attack is facial well into their Reply. *See* Filing 24; Filing 28 at 13 ("The Investor's Agreement clearly names Short Pay, LLC as the purchaser, creating a facial standing defect that cannot be cured."). Put briefly, Defendants assert that an Investor's Agreement names a separate party, Short Pay, LLC (Short Pay), as holding the Burger Detour interests Finocchiaro purports to hold.[3] Filing 24 at 13. According to Defendants, because "[a]ll of the Plaintiff's claims in his Amended Complaint are based on either (1) his alleged status as a member of Burger Detour, LLC, or (2) contributions and actions taken as a member of Burger Detour, LLC," Finocchiaro "lacks standing to bring his Amended Complaint and it should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Filing 24 at 12. The Court considers this attack facial because Defendants' argument relies on the Investor's Agreement, and the Investor's Agreement is embraced by the Amended Complaint. Filing 18 at 2 (¶ 13) ("McMahon presented Finocchiaro with a document entitled 'Investor's Agreement' in which Finocchiaro would purchase a 40% interest in Burger Detour for a purchase price of $1,416,759."); Filing 28 at 7 ("The Investor's Agreement clearly names Short Pay, LLC as the purchaser, creating a facial standing defect that cannot be cured."). Because "documents necessarily embraced by the complaint are not matters outside the pleading," Defendants' argument is facial. *Gorog*, 760 F.3d at 791.

Finocchiaro seems to understand Defendants' attack on subject-matter jurisdiction to be a facial challenge. *See* Filing 27 at 7. Although Finocchiaro never expressly states that he

[3] Defendants assert that Finocchiaro is the "sole member of Short Pay, LLC." Filing 28 at 10. Finocchiaro does not say whether he is the sole member of Short Pay. Filing 27 at 7. Finocchiaro, however, signed the Investor's Agreement on behalf of Short Pay. Filing 25-1 at 8.

understands Defendants' challenge to be a facial one, he invokes Rule 12(b)(6) standards when resisting the challenge. Filing 27 at 7 ("[B]ut at this stage the facts, taken as true, are sufficient to provide Plaintiff with standing."); *Smith*, 106 F.4th at 813 ("If [a Rule 12(b)(1) motion] is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6).").

The Court therefore assesses whether Finocchiaro has plausibly shown standing. *Hawse*, 7 F.4th at 689–90 ("[T]o survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.").

*2. The Parties' Arguments*

Defendants maintain that "[s]tanding is a jurisdictional issue." Filing 24 at 12 (citing *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543 (8th Cir. 2018)). In order to have standing, "the plaintiff must have a 'personal stake' in the case," according to Defendants. Filing 24 at 12 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).

Defendants argue that Finocchiaro's Amended Complaint fails to show that he has a "personal stake" in the case. Filing 24 at 13. Defendants argue that this is so because Finocchiaro refers to an "Investor's Agreement" that shows Short Pay, not Finocchiaro, purchased the 40% interest in Burger Detour for $1,416,759. Filing 24 at 13. Further, they argue that "[n]o transfer of Burger Detour units by Short Pay has occurred as the Investor's Agreement also prohibits unilateral transfers by Short Pay, LLC." Filing 24 at 13 (citing Filing 25-1 at 6). Defendants therefore maintain that "Short Pay, LLC and Chad McMahon remain the only members of Burger Detour." Filing 24 at 13 (citing Filing 22). This matters, Defendants argue, because "[a]ll of [Finocchiaro's] claims in his Amended Complaint are based on either (1) his alleged status as a

member of Burger Detour, LLC, or (2) contributions and actions taken as a member of Burger Detour, LLC." Filing 24 at 12. Defendants conclude that Finocchiaro therefore "lacks standing to bring his Amended Complaint and it should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)" because he does not have a personal stake in the matter. *See* Filing 24 at 12.

Finocchiaro resists these arguments on two bases. First, Finocchiaro asserts that Defendants misconstrue the Amended Complaint. Filing 27 at 6. Finocchiaro disputes Defendants' assertions that the Amended Complaint's claims "are based on either (1) [Plaintiff's] alleged status as a member of Burger Detour, LLC, or (2) contributions and actions taken as a member of Burger Detour, LLC." Filing 27 at 6 (citing Filing 24 at 12). Finocchiaro points to his claims for fraud and securities violations as examples of why Defendants' reading is wrongheaded, saying "Finocchiaro's claims for fraud and securities violations are based on misrepresentations by Chad McMahon to Plaintiff personally to induce him to 'invest' in both Burger Detour and Number Four." Filing 27 at 6. Finocchiaro argues that only two of his claims, "Claims 1 (accounting) and 8 (NLLCA)" are "brought as a member of Burger Detour." Filing 27 at 6. Thus, Finocchiaro contends that Defendants' argument that the entire Amended Complaint should be dismissed for failing to show a personal stake is unavailing.

Finocchiaro's second argument sweeps more broadly, touching all the claims made in the Amended Complaint. Filing 24 at 6–7. Finocchiaro argues that the Investor's Agreement "does not definitively determine who the owners [of Burger Detour] are." Filing 27 at 7. According to Finocchiaro, "Section 3 of the Agreement states that the Certificate for the 40% interest will 'be delivered to Joe [Finocchiaro]' after the entire purchase price is paid. That Certificate is not in evidence." Filing 27 at 7. Finocchiaro maintains that the Certificate "was never delivered to [him],

and other indices of ownership (Operating Agreement schedules, K-1s, etc.) have been unlawfully withheld." Filing 27 at 7. Finocchiaro maintains that it is therefore "unknown" "[w]hether McMahon issued the membership interest to [Finocchiaro]." Filing 27 at 7. Finocchiaro takes this to mean that "[d]iscovery may well reveal that Short Pay is the proper member to bring some of these claims, and that may lead to further amendments of the pleadings, but at this stage the facts, taken as true, are sufficient to provide [him] with standing." Filing 27 at 7.

The initial focus of Defendants' reply is on Finocchiaro's first argument. Defendants maintain that "Plaintiff acknowledges, at a minimum, Claim 1 for accounting and Claim 8 for breach of the NLLCA, require [Finocchiaro] to be a member of Burger Detour to assert said claims." Filing 28 at 9. Defendants maintain that because Finocchiaro is not a member of Burger Detour, those claims must be dismissed. Filing 28 at 9. Defendants go on to maintain that Finocchiaro's arguments relating to his remaining claims also fail. Filing 28 at 9–10. According to Defendants, both of Finocchiaro's securities claims "are based on '[his] purported membership interests in Burger Detour and Number Four." Filing 28 at 9 (citing Filing 18 at 9–10 (¶¶ 68, 73)). Defendants argue further, "[Finocchiaro], who did not individually purchase any securities and is not a member of any alleged entity, does not have standing to bring the alleged securities claims." Filing 28 at 9. Defendants also argue that "Claim 2 for fraud, Claim 5 for declaratory judgment, Claim 6 for conversion, and Claim 7 for conspiracy all arise out of the same alleged misrepresentations by Defendant McMahon." Filing 28 at 10 (citing Filing 18 at 8, 11–12 (¶¶ 60, 78, 85, 89)). Defendants assert, "To the extent [Finocchiaro] actually paid those funds, he would have been doing so on behalf of Short Pay, LLC, who is the actual 40% owner and member of Burger Detour." Filing 28 at 10. Defendants accordingly contend that "[i]f Plaintiff was defrauded . . . then he was defrauded as the sole member of Short Pay, LLC, not individually." Filing 28 at

10. Similarly, according to Defendants, Finocchiaro's other claims rely on actions taken in the capacity of a Burger Detour member and must be dismissed. *See* Filing 28 at 10.

Defendants then turn to Finocchiaro's second argument. Defendants say Finocchiaro "attempts to argue that the Investor's Agreement 'does not definitively determine' the owners of Burger Detour." Filing 28 at 10–11 (citing Filing 27 at 7). Defendants argue that "[t]he only support Plaintiff cites to for this confounding proposition is that 'Section 3 of the Agreement states that the Certificate for the 40% interest will be delivered to Joe [Finocchiaro] after the entire purchase price is paid.'" Filing 28 at 10–11 (internal quotation marks omitted). Defendants contend,

> The statement that the certificate would be 'delivered to Joe' merely indicates the physical delivery method, not the legal owner. It is Plaintiff that alleges in his Amended Complaint that this Investor's Agreement is the contractual document by which membership units in Burger Detour were purchased. A simple review of the Investor's Agreement makes clear that Short Pay, LLC was the purchaser and the subsequent owner of any membership units under that Agreement.

Filing 28 at 12. Defendants therefore conclude that "[t]he Investor's Agreement clearly names Short Pay, LLC as the purchaser, creating a facial standing defect that cannot be cured." Filing 28 at 13.

*3. Finocchiaro Has Not Plausibly Pleaded Standing for Claims that Rely on Membership in Burger Detour*

The Supreme Court has noted that "[f]or there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing. To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC*, 594 U.S. at 423 (internal quotation marks and citations omitted). "To answer that question in a way sufficient to establish standing, a plaintiff must" meet three requirements. *Id.* The Eighth Circuit has summarized those requirements, saying,

> First and foremost, there must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement....

*Agred Found. v. U.S. Army Corps of Eng'rs.*, 3 F.4th 1069, 1073 (8th Cir. 2021) (quoting *Steel Co.*, 523 U.S. at 102–104). If a plaintiff fails to show any one of the three requirements, the Court must dismiss the case, as there would be "no case or controversy for the federal court to resolve." *TransUnion LLC*, 594 U.S. at 423; *see also Brooks v. City of Des Moines*, 844 F.3d 978, 979 (8th Cir. 2016) ("Where a plaintiff lacks standing, the court has no subject matter jurisdiction.").

In Nebraska, an LLC "is an entity distinct from its members." Neb. Rev. Stat. Ann. § 21-104. Members of an LLC do not have a direct ownership interest in the LLC's property. *See Streck, Inc. v. Ryan Family, L.L.C.*, 901 N.W.2d 284, 293 (Neb. 2017). Therefore, a member of an LLC may not ordinarily bring suit in his or her name for injuries suffered by the LLC. *Id.* ("[W]e have generally treated actions by a member of an LLC in the same manner as actions by a shareholder of a corporation. As a general rule, a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property. The right of a shareholder to sue is derivative in nature and normally can be brought only in a representative capacity. . . ."); *Stevens v. Dakota Title & Escrow Co.*, No. A-03-378, 2004 WL 2381386, at *6 (Neb. Ct. App. Oct. 26, 2004) ("[W]hile the Gebhardts have an interest in [the LLC], they no longer have an interest in the property. Rather, it is the L.L.C. that has the interest in the property. To hold otherwise would be to disregard the nature and viability of limited liability companies." (internal quotation marks and citations omitted)).

Finocchiaro must "allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that [he] satisfies the elements of Article III standing" to survive Defendants' Motion to Dismiss. *Hawse*, 7 F.4th at 689–90. Importantly, Finocchiaro cannot make a plausible showing that he has a "personal stake in the case" by alleging he is a member, perhaps the sole member, of Short Pay. *TransUnion LLC*, 594 U.S. at 423; *see Streck*, 901 N.W.2d at 293 (saying that a member of an LLC cannot "bring an action in his or her own name to recover for wrongs done to the [LLC] or its property."). Accordingly, the Court assesses whether the Investor's Agreement strips Finocchiaro of standing.

It is clear that Short Pay, not Finocchiaro, would acquire a membership interest in Burger Detour under the terms of the Investor's Agreement. Filing 25-1 at 3–5. Among other provisions, the Investor's Agreement states,

> 1. Sale and Transfer of Voting Membership Interest. Pursuant to this Agreement, Chad agrees to sell, and Short Pay agrees to purchase, 40% (400,000 Voting Membership Units) of Burger Detour, LLC, which units are currently owned and titled in the name of Chad on the books and records of the LLC. The effect of such sale and purchase will have the effect of reducing Chad's ownership to 600,000 Units, or 60% ownership of the LLC. Upon the execution of this Agreement and compliance with the terms of this Agreement, the books and records of the LLC will be modified to the extent that a Certificate for 400,000 Units of Voting Membership Interest in the LLC will be transferred to Short Pay and a new Certificate of Membership Interest will be issued to Chad for 600,000 Units of Voting Membership Interest.
>
> * * *
>
> 6. Operating Agreement. As the holder and owner of a Voting Membership in the Burger Detour, Short Pay's ownership of such interest shall be subject to the terms and conditions of the Operating Agreement of the LLC.

Filing 25-1 at 3–5. Whether the Investor's Agreement fatally contradicts the Amended Complaint's allegations and deprives Finocchiaro of a personal stake in the case therefore turns on

whether the Investor's Agreement authoritatively shows Short Pay possesses the Burger Detour interests.

Defendants maintain that the Investor's Agreement authoritatively shows that Burger Detour interests lie with McMahon and Short Pay, not with Finocchiaro. Filing 28 at 12. Documents like the Certificate, Operating Agreement schedules, and K-1s are not needed to show the disputed Burger Detour membership belongs to Short Pay, according to Defendants. Filing 28 at 12 ("It is Plaintiff that alleges in his Amended Complaint that this Investor's Agreement is the contractual document by which membership units in Burger Detour were purchased."). Finocchiaro disputes the idea that the Investor's Agreement makes clear that the disputed membership interest belongs to Short Pay, saying the Certificate and other "indices of ownership" like Operating Agreement schedules and K-1s are not in evidence. Filing 27 at 7. Thus, Finocchiaro argues that "[w]hether McMahon issued the membership interest to [Finocchiaro] or to Short Pay is unknown." Filing 27 at 7. Finocchiaro therefore urges the Court to accept his allegations as true and find standing. Filing 27 at 7. The Court finds Finocchiaro fails to "allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that [he] satisfies the elements of Article III standing" for claims relying on Burger Detour membership. *Hawse*, 7 F.4th at 689–90.

The only plausible inference flowing from the Investor's Agreement is that the Burger Detour membership interests belong to Short Pay, not Finocchiaro. The Amended Complaint states that "Finocchiaro would purchase a 40% interest in Burger Detour" through the "Investor's Agreement." Filing 18 at 2 (¶ 13). However, that agreement is clearly between McMahon and Short Pay only. Filing 25-1 at 3, 7–8. Finocchiaro is not a party to the Investor's Agreement and is not mentioned as a purchaser of an interest in Burger Detour. *See* Filing 25-1 at 3–8. Instead,

the Investor's Agreement states that "a Certificate for 400,000 Units of Voting Membership Interest in the [Burger Detour] will be transferred to Short Pay" "[u]pon the execution of [the] Agreement and compliance with the terms of [the] Agreement." Filing 25-1 at 3–4. The Investor's Agreement only mentions Finocchiaro in passing, saying that the Certificate containing Short Pay's Burger Detour interests would be physically delivered to Finocchiaro. *See* Filing 25-1 at 4 ("As security for the payment of the sums set forth herein, the Certificate for the 400,000 (40%) Voting Membership Units shall be held by Chad until the entire purchase price is paid. At that time, such Certificate will be delivered to Joe [Finocchiaro].").

In other words, the Investor's Agreement shows the Burger Detour membership interest belongs to Short Pay and therefore fatally contradicts the Amended Complaint's allegations that the membership interest purchased through the Investor's Agreement belongs to Finocchiaro personally. *Compare* Filing 18 at 2 (¶ 10) (Amended Complaint alleging, "Finocchiaro owns 40% of the membership interest in Burger Detour."), *with* Filing 25-1 at 3 (Investors' Agreement stating, "Upon the execution of this Agreement and compliance with the terms of this Agreement, the books and records of the LLC will be modified to the extent that a Certificate for 400,000 Units of Voting Membership Interest in the LLC will be transferred to Short Pay. . . ."). The contradiction means Finocchiaro fails to plausibly show standing for claims dependent upon membership in Burger Detour. *See e.g.*, *Meardon*, 994 F.3d at 935 (explaining that "[b]ecause [a written contract's] contents contradict the pleadings and defeat Plaintiffs' annuity-related contract claim, we agree with the district court that the annuity-related contract claim must be dismissed."); *Waters*, 921 F.3d at 734 (concluding the court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence").

In the alternative, allegations of Finocchiaro's personal membership in Burger Detour are speculative and unsupported, and therefore not plausibly pleaded. Filing 27 at 6. Finocchiaro must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that [he] satisfies the elements of Article III standing," but Finocchiaro cannot say "[w]hether McMahon issued the membership interest to [Finocchiaro] or to Short Pay." *Id.*; *see* Filing 27 at 7. Finocchiaro maintains that the Investor's Agreement "does not definitively determine who the owners [of Burger Detour] are." Filing 27 at 7. Finocchiaro argues that given Burger Detour will not provide the documents that would illustrate proof of ownership, the Court should accept Finocchiaro's allegations of personal interest in Burger Detour as true and find standing. *See* Filing 27 at 7.

In making that argument, however, Finocchiaro reveals he cannot plausibly allege that he personally owns the Burger Detour interests. Finocchiaro admits he does not know if the Certificate showing ownership was issued to himself personally. Filing 27 at 7. Indeed, the Investor's Agreement states the Certificate should be issued to Short Pay, not to Finocchiaro personally. Filing 25-1 at 3–4. Finocchiaro therefore cannot plausibly show personal standing for the claims relying on membership in Burger Detour. *See Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (saying "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient" to show plausibility). Therefore, there are no nonspeculative, nonconclusory allegations that cast any doubt on the Investor's Agreement showing Short Pay, not Finocchiaro, is the Burger Detour member.

In short, Finocchiaro has failed to plausibly show standing as to claims that rely on Finocchiaro's personal membership in Burger Detour. *Hawse*, 7 F.4th at 689–90. Allegations of personal Burger Detour membership are contradicted by the Investor's Agreement. *Id.*; *see e.g.,*

*Meardon*, 994 F.3d at 935 (explaining that "[b]ecause [a written contract's] contents contradict the pleadings and defeat Plaintiffs' annuity-related contract claim, we agree with the district court that the annuity-related contract claim must be dismissed"). In the alternative, allegations of Finocchiaro's membership are speculative and therefore not plausibly pleaded. *Id.* Thus, for those claims that rely on membership in Burger Detour or Number Four (since Finocchiaro only alleges Number Four membership derives from his alleged Burger Detour membership), Finocchiaro has not plausibly "answer[ed] the question: 'What's it to you?'" *See TransUnion LLC*, 594 U.S. at 423; Filing 18 at 9, 11 (¶¶ 62, 65-66, 77) (saying membership in Number Four was understood to come through membership in Burger Detour). As to those claims that do not rely on membership in Burger Detour or Number Four, those claims survive a Fed. R. Civ. P. 12(b)(1) analysis. The Court now considers whether any or all of Finocchiaro's claims require a personal membership in Burger Detour.

*4. Six of Finocchiaro's Claims Rely on Personal Membership in Burger Detour*

a. First Cause of Action: Accounting

Finocchiaro's first claim is for "equitable relief in the form of a court-ordered accounting." Filing 18 at 8 (¶ 58). The claim expressly relies on membership in Burger Detour. Filing 18 at 8 (¶ 58). The Amended Complaint states,

> As a 40% owner of Burger Detour and 40% equitable owner of Number Four, Plaintiff is owed fiduciary duties and is entitled to an accounting of all funds contributed, revenues, expenses, distributions, and assets of Burger Detour and Number Four.

Filing 18 at 53. Finocchiaro does not dispute that this claim requires membership in Burger Detour. Filing 27 at 6 ("[T]he only two claims brought as a member of Burger Detour are Claims 1 (accounting) and 8 (NLLCA)"). Finocchiaro's claim for accounting must therefore be dismissed because it requires personal membership in Burger Detour, and Finocchiaro has not plausibly

shown that he has such membership, so he lacks standing. *Hawse*, 7 F.4th at 689–90 ("[T]o survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.").

b. Second Cause of Action: Fraud

Finocchiaro's second claim is for fraud. Filing 18 at 8–9 (¶¶ 59–65). Among other things, Finocchiaro appears to allege that McMahon made representations to Finocchiaro that he, not Short Pay, needed to contribute funds to support business operations. Filing 18 at 3, 8 (¶¶ 20, 61) (saying "McMahon continually sought funds from Finocchiaro and told Finocchiaro such funds were needed for operations, to make payroll, and to pay down debt."). Finocchiaro appears to plead that, in reliance on those representations, he personally made the contributions. Filing 18 at 5 (¶¶ 32–33). McMahon disputes that Finocchiaro can plausibly plead that Finocchiaro made the contributions personally and, instead, asserts that the contributions had to have been made in the capacity of a Burger Detour member. Filing 28 at 10 ("If Plaintiff was defrauded (which Defendants wholly deny), then he was defrauded as the sole member of Short Pay, LLC and not individually.").

When taking Finocchiaro's factual allegations as true and drawing all reasonable inferences in Finocchiaro's favor for purposes of assessing Defendants' Joint Motion to Dismiss, the Court finds that Finocchiaro plausibly pleads that McMahon made allegedly false representations concerning the need to make "capital contributions . . . over and above the $1,416,759 purchase price" to Finocchiaro personally. *Smith*, 106 F.4th at 813 ("If [a Rule 12(b)(1) motion] is a facial attack, the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)."); *Bauer*, 25 F.4th at 589 (saying that, in ruling on a Rule 12(b)(6)

motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'"); *see* Filing 18 at 3–4, 8 (¶¶ 16, 20, 61). Allegations of contributions sought from "Finocchiaro" that were "over and above the $1,416,759 purchase price" do not necessarily turn on Burger Detour membership. *See* Filing 18 at 3–4, 8 (¶¶ 16, 20, 61). Also supporting this reading is the fact that Finocchiaro does not allege that McMahon promised Finocchiaro a greater membership share in Burger Detour in exchange for the sought contributions but that Finocchiaro was instead told that the funds were needed for operating expenses, further suggesting the representations were made to Finocchiaro personally. *See* Filing 18 at 3–4 (¶ 20). Finocchiaro similarly plausibly pleads that he relied on such allegedly misleading representations by making contributions in his personal capacity. Filing 18 at 5 (¶¶ 32–33). Therefore, the Amended Complaint plausibly alleges that Finocchiaro was defrauded in his personal capacity to the extent that the claim is based on contributions made "over and above the $1,416,759 purchase price," plausibly showing Finocchiaro has a personal stake in the matter. Filing 18 at 3 (¶ 16); *Agred Found.*, 3 F.4th at 1073 ("There must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff that is concrete and actual. . . ."); *Hawse*, 7 F.4th at 689–90 ("[T]o survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.").

c. Third Cause of Action: Federal Securities Law

Finocchiaro's third claim alleges that "Defendants' conduct set forth herein violates the Securities Act of 1933, 15 U.S.C. § 77[l], and Section 10(b) of the Securities Act of 1934." Filing 18 at 10 (¶ 71). To have standing under the Securities Act of 1933, codified as 15 U.S.C. § 77l, the plaintiff must be the purchaser of the security. *Licht v. Watson*, 567 Fed.Appx. 689, 691–92 (11th

Cir. 2014) ("Thus, a person only has standing to sue under Section 12 if he purchased securities from the defendant."); *see also* *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013); *Ratner v. Sioux Nat. Gas Corp.*, 770 F.2d 512, 517 (5th Cir. 1985) (collecting cases). With respect to § 10(b), a plaintiff must be an actual purchaser or seller of a security. *United States v. O'Hagan*, 521 U.S. 642, 654 (1997) ("In *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), we held that only actual purchasers or sellers of securities may maintain a private civil action under § 10(b) and Rule 10b-5.").

Finocchiaro's federal securities law claims are pleaded in the capacity of a Burger Detour member because the plaintiff must be the purchaser of the securities. *O'Hagan*, 521 U.S. at 654; *see, e.g.*, *Licht*, 567 Fed.Appx. at 691–92. As the Court detailed above, Finocchiaro cannot plausibly demonstrate he personally purchased an interest in Burger Detour, extending him membership in Burger Detour and Number Four, rather than Short Pay making the purchase and acquiring the interests. *Hawse*, 7 F.4th at 689–90. Finocchiaro's third cause of action must accordingly be dismissed for lack of subject matter jurisdiction. *Id.*

d. Fourth Cause of Action: Nebraska Securities Act

Finocchiaro's fourth claim suffers from the same defects as his third. Finocchiaro attempts to make out a claim under the Nebraska Securities Act, but such a claim like the parallel federal claim requires the plaintiff to have purchased a security in order to have standing. Neb. Rev. Stat. § 8-1118(1). The Nebraska Securities Act states,

> Any person who offers or sells a security in violation of section 8-1104 or offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person buying the security

> from him or her, who may sue either at law or in equity to recover the consideration paid for the security….

Neb. Rev. Stat. § 8-1118(1). Importantly, the offeror or seller is "liable to the person buying the security from him or her." Neb. Rev. Stat. § 8-1118(1). Like the federal analogues, the claim is necessarily pleaded in the capacity of a member because the plaintiff must be the purchasing party in order to have standing under Neb. Rev. Stat. § 8-1118(1). *TransUnion LLC*, 594 U.S. at 423 (saying "[f]or there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case"). Finocchiaro pleads his "purported membership interests in Burger Detour and Number Four" as the securities forming the basis of his claim. Filing 18 at 10 (¶ 73). However, as shown by the Court above, Finocchiaro cannot plausibly maintain that he personally purchased or acquired ownership of the securities. *Hawse*, 7 F.4th at 689–90. Finocchiaro's fourth cause of action must be dismissed. *Id.*

e. Fifth Cause of Action: Declaratory Judgment

Finocchiaro's fifth cause of action "seeks a declaratory judgment declaring that he is a 40% owner of Number Four, LLC and entitled to all rights and distributions owed to him as a member." Filing 18 at 11 (¶ 82). Finocchiaro also pleads this claim in the capacity of a Burger Detour interest holder. Finocchiaro alleges he is entitled to membership in Number Four because of his membership in Burger Detour. *See* Filing 18. Nowhere in the Amended Complaint does Finocchiaro allege he acquired Number Four membership status separate from his alleged Burger Detour status. *See* Filing 18. Instead, Finocchiaro repeatedly indicates that any membership interest in Number Four derives from membership purchased and acquired in Burger Detour. *See* Filing 18 at 6, 9, 11, 13 (¶¶ 37, 40, 62, 65–66, 77–78, 81, 93). Making this point, Finocchiaro states, "Defendant McMahon made representations that Finocchiaro was a 40% owner in Number Four, LLC because it was owned by Burger Detour and Finocchiaro was a 40% owner of Burger

Detour" and that Finocchiaro relied on this representation when making the investment. *See* Filing 18 at 9, 11 (¶¶ 62, 65-66, 77).

As detailed above, Finocchiaro cannot plausibly maintain a personal membership interest in Burger Detour. Because any membership interest in Number Four would derive from the interest purchased in Burger Detour, Finocchiaro also cannot plausibly maintain that he has a personal stake in his declaratory judgment claim. That is, Finocchiaro cannot plausibly maintain that "[a] declaratory judgment is required to protect [his] [personal] interests," as he cannot plausibly allege that he has personal membership in Burger Detour. Filing 18 at 11 (¶ 83). Finocchiaro's fifth cause of action must accordingly be dismissed. *Agred Found.*, 3 F.4th at 1073 ("[T]here must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical."); *Hawse*, 7 F.4th at 689–90 ("[T]o survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.").

f. Sixth Cause of Action: Conversion

Finocchiaro's sixth claim alleges conversion. Filing 18 at 12. Finocchiaro alleges that he "paid over $2,000,000 in cash to McMahon personally for the purported operation of the Burger Detour stores." Filing 18 at 12 (¶ 85). Much like the fraud claim assessed above, Finocchiaro pleads that he personally made the alleged contributions. Filing 18 at 12 (¶ 85). For instance, Finocchiaro alleges that "McMahon repeatedly assured Finocchiaro that the money he was giving to McMahon including over $2,000,000 in cash) was being deposited and used for the business." Filing 18 at 6 (¶ 36). However, Finocchiaro alleges that the approximately $2,000,000 he personally contributed was wrongfully retained and not used for operations but, instead, for

personal use. Filing 18 at 12 (¶¶ 85–86). Thus, the Amended Complaint plausibly alleges that Finocchiaro contributed approximately $2,000,000 in his personal capacity and that the money was allegedly converted, plausibly showing a personal stake. Filing 18 at 6, 12 (¶¶ 36, 85–86); *Agred Found.*, 3 F.4th at 1073 (saying "there must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff that is concrete and actual. . . ."); *Hawse*, 7 F.4th at 689–90 ("[T]o survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.").

g. Seventh Cause of Action: Conspiracy

Finocchiaro alleges conspiracy for his seventh claim. Unlike the alleged fraud and conversion claims, Finocchiaro's conspiracy claim is pleaded in the capacity of a Burger Detour member. Filing 18 at 12 (¶ 89). That is, the Amended Complaint alleges that "Defendants conspired to commit the underlying torts alleged herein by agreeing to induce Plaintiff's contributions with false promises of 40% ownership in Number Four and the Properties." Filing 18 at 12 (¶ 89). To the extent there was a conspiracy, the Amended Complaint alleges that it was predicated on an agreement to commit alleged torts against a Burger Detour member, as the false promises of "40% ownership in Number Four and the Properties" were only ever plausibly said to flow from membership in Burger Detour. *See* Filing 18 at 6, 9, 12 (¶¶ 40, 62, 89). Because Finocchiaro cannot plausibly show that he has personal membership in Burger Detour, the conversion claim must be dismissed for lack of standing. *Hawse*, 7 F.4th at 689–90 ("[T]o survive a motion to dismiss for lack of jurisdiction, a plaintiff must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing.").

h. Eighth Cause of Action: Violation of the Nebraska Uniform Limited Liability Company Act (NLLCA)

Much like Finocchiaro's first claim, Finocchiaro's last claim expressly relies on personal membership interest in Burger Detour. Filing 18 at 13 (¶ 93). That is, "[a]s a member of Burger Detour and equitable member of Number Four, Plaintiff is entitled under Neb. Rev. Stat. § 21-139 to inspect and copy the companies' records, including operating agreements, financial statements, tax returns and membership lists." Filing 18 at 13 (¶ 93). Here, too, Finocchiaro concedes that the claim relies on membership in Burger Detour, saying "the only two claims brought as a member of Burger Detour are Claims 1 (accounting) and 8 (NLLCA)." Filing 27 at 6. Finocchiaro's eighth claim must be dismissed as it requires membership in Burger Detour, and Finocchiaro has not plausibly shown he has a personal stake in the matter. *Hawse*, 7 F.4th at 689–90.

5. *Summary of Claims for which Finocchiaro Lacks Standing*

Finocchiaro's first, third, fourth, fifth, seventh, and eighth causes of action either expressly rely on personal Burger Detour interests or are necessarily contingent on conduct undertaken in the capacity of a member. Those six claims must accordingly be dismissed for lack of subject matter jurisdiction. *Brooks*, 844 F.3d at 979 ("Where a plaintiff lacks standing, the court has no subject matter jurisdiction."). In contrast, Finocchiaro has standing to pursue his second cause of action for fraud and his sixth cause of action for conversion.

**B. Finocchiaro's Fraud Claim Satisfies Rule 9(b)'s Heightened Pleading Requirements**

Defendants' Joint Motion to Dismiss Finocchiaro's initial complaint challenged Finocchiaro's fraud claim on the ground that it was not pleaded with sufficient particularity under Federal Rule of Civil Procedure 9(b). Filing 6 at 2–4. Defendants' Joint Motion to Dismiss the Amended Complaint, however, does not reassert the Rule 9(b) challenge against the Amended

Complaint's fraud claim. Filing 24. Nonetheless, the Eighth Circuit Court of Appeals has observed that "Rule 9(b) is a rule of procedure that applies regardless of whether . . . the issue has been raised or addressed by either party." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073 (8th Cir. 2016) (internal quotation marks omitted). Therefore, the Court considers whether Finocchiaro's fraud claim has been pleaded with sufficient particularity. The Court determines that the fraud claim satisfies Rule 9(b)'s heightened pleading requirements.

*1. Rule 9(b) Standards*

Fraud claims must satisfy the "particularity" requirements of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) (stating in pertinent part, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Eighth Circuit has repeatedly stated, "In other words, [Federal] Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1051 (8th Cir. 2024) (quoting *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011)). Somewhat more specifically, "[w]hen Rule 9(b) applies, the complaint must allege such matters as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Collins v. Metro. Life Ins. Co.*, 117 F.4th 1010, 1017 (8th Cir. 2024) (cleaned up), *cert. denied*, 145 S. Ct. 1310 (2025); *United States ex rel. Holt v. Medicare Medicaid Advisors, Inc.*, 115 F.4th 908, 916 (8th Cir. 2024) (same). Furthermore, "[t]hough Rule 9(b) does not require alleging the 'specific details of every alleged fraudulent claim,' [the Eighth Circuit has] dismissed [a] claim because [the claimant] 'must provide some representative examples of [the] alleged fraudulent conduct, specifying the time, place, and content of [the] acts and the identity of the actors." *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1164 (8th Cir. 2019)

(emphasis in original) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)).

2. *Finocchiaro's Fraud Claim Satisfies Rule 9(b) Pleading Standards*

Finocchiaro's fraud claim satisfies all the requirements of the "first paragraph of any newspaper story," consisting of the "who, what, when, where, and how" of the alleged misrepresentations, as he provides two rather detailed examples that are representative of the alleged fraudulent conduct occurring "throughout 2022, 2023, 2024, and 2025." *UMB Bank*, 89 F.4th at 1051; Filing 18 at 3 (¶ 17). Finocchiaro's fraud claim "incorporates the foregoing paragraphs as if fully set forth herein." Filing 18 at 8 (¶ 59). Plaintiff pleaded a representative example of the alleged fraudulent conduct committed "throughout 2022, 2023, 2024, and 2025," that allegedly occurred on January 19, 2025. Filing 18 at 3–4 (¶¶ 17, 22). On that date, McMahon is alleged to have misrepresented Finocchiaro's ownership statuses. Filing 18 at 4–5 (¶¶ 22–28) ("When Finocchiaro said 'So, as of right now . . . I am still 40% of all the land, all the buildings, all the equipment, the businesses, everything.' [sic] McMahon responded, 'Under Burger Detour, LLC, correct.'"); *UMB Bank*, 89 F.4th at 1051 (saying that a fraud claim must allege "who" made the alleged misrepresentations). The example also provides the "what" and "when," as Finocchiaro alleges that McMahon represented that Finocchiaro was a 40% owner of Burger Detour and Number Four on January 19, 2025. Filing 18 at 4–5 (¶¶ 22–28) (explaining that when Finocchiaro said "[s]o, as of right now . . . I am still 40% of . . . the businesses," "McMahon responded, Under Burger Detour, LLC, correct" and that McMahon also stated that Number Four is "under" Burger Detour (internal quotation marks omitted)); *UMB Bank*, 89 F.4th at 1051 (saying that a fraud claim must allege the "when" and "what" of the alleged misrepresentations). The Amended Complaint also alleges the "where" and "how." *UMB Bank*, 89 F.4th at 1051 (saying that a fraud claim must

allege the "where" and "how."). Finocchiaro alleges that the misrepresentations were communicated in the course of a personal conversation relating to the "ownership structure [of Burger Detour and Number Four] and the titling of the Properties" and that the misrepresentations relating to Finocchiaro's ownership interests were intended to induce Finocchiaro's reliance and were, in fact, what Finocchiaro relied on in making contributions to Burger Detour, Number Four, and McMahon. *See* Filing 18 at 4, 9 (¶¶ 22–29, 65). The Amended Complaint similarly alleges "what was given up" as a result of the alleged misrepresentations, as the January 19, 2025, conversation is a representative example of misrepresentations made in 2022, 2023, 2024, and 2025 and Finocchiaro "rel[ied] on [these] false representations made by McMahon when he paid funds to Burger Detour, Number Four, and McMahon." *See* Filing 18 at 2–3, 5, 8–9 (¶¶ 13–18, 32, 59–60, 65); *Collins*, 117 F.4th at 1017 (saying the complaint must allege "what was obtained or given up" in reliance on the alleged misrepresentation); *United States ex rel. Strubbe*, 915 F.3d at 1164 (saying that the claimant "must provide some representative examples of [the] alleged fraudulent conduct").

Finocchiaro provides another representative example of the alleged fraudulent conduct occurring throughout 2022, 2023, 2024, and 2025 when describing a text message exchange "on or about February 16, 2025," as Finocchiaro alleges McMahon stated that "[McMahon] would 'try to at least have [Finocchiaro's] 40% after ALL debt paid off[.]" Filing 18 at 3, 5 (¶¶ 17, 29). Through this text message exchange, Finocchiaro alleges that McMahon misrepresented Finocchiaro's ownership status over text message on February 16, 2025, in order that Finocchiaro would make continued contributions and that Finocchiaro relied on the misrepresentations in making contributions to Burger Detour, Number Four, and McMahon. *See* Filing 18 at 2, 5, 8–9 (¶¶ 13–18, 29, 59, 64–65); *UMB Bank*, 89 F.4th at 1051 (saying that a fraud claim must satisfy all

the requirements of the "first paragraph of any newspaper story," consisting of the "who, what, when, where, and how" of the alleged misrepresentations).

Finocchiaro has provided two examples representative of the fraudulent conduct committed "throughout 2022, 2023, 2024, and 2025" that satisfy the requirements of the "first paragraph of any newspaper story," and Finocchiaro's fraud claim therefore complies with Rule 9(b)'s heightened pleading requirements. *See United States ex rel Strubbe*, 915 F.3d at 1164; Filing 18 at 3 (¶ 17).

### C. Finocchiaro's Fraud and Conversion Claims State Claims upon which Relief Can Be Granted

In addition to asserting Federal Rule of Civil Procedure 12(b)(1) as a ground for dismissal, Defendants argue that Finocchiaro's declaratory judgment, conversion, conspiracy, and NLLCA claims must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants only argue that the fraud claim should be dismissed pursuant to Rule 12(b)(1). Filing 24. Given the fraud claim survives a Fed. R. Civ. P. 9(b) analysis as outlined above, and Defendants did not seek to dismiss the fraud claim on the basis of Rule 12(b)(6), the fraud claim survives Defendants' Motion to Dismiss. Because the Court has already disposed of Finocchiaro's declaratory judgment, conspiracy, and NLLCA claims on jurisdictional grounds, the Court considers Defendants' Rule 12(b)(6) challenge only as to Finocchiaro's conversion claim.

*1. Rule 12(b)(6) Standards*

In order to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[T]hreadbare recitals of the elements of a cause of action' cannot survive a [Rule 12(b)(6)] motion to dismiss." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Eighth Circuit Court of Appeals has explained, "A claim survives a

Rule 12(b)(6) motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680–83). To put it another way, a court "must determine whether [a plaintiff's] complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). Thus, "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In contrast, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Id.* (internal quotation marks and citations omitted). The Eighth Circuit has cautioned that "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594.

In ruling on a Rule 12(b)(6) motion, a court must "accept 'the facts alleged in the complaint as true and draw[ ] all reasonable inferences in favor of the nonmovant.'" *Bauer*, 25 F.4th at 589. On the other hand, "[m]ere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson*, 2 F.4th 1068 (internal quotation marks and citations omitted). A court also need not accept a pleader's "legal conclusions drawn from the facts." *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 755 (8th Cir. 2021). A court is not required to wait to see if more specific information becomes available through the discovery process to decide if a pleading can state a claim. *Steinbuch v. Cutler*, 518 F.3d 580, 591

(8th Cir. 2008) (finding no abuse of discretion in refusing to allow discovery where a pleading lacked sufficient factual allegations to state a claim).

*2. The Parties' Arguments*

Defendants argue that "[Finocchiaro's] conversion claim fails as a matter of law." Filing 25 at 5. According to Defendants, "a claim for conversion of money requires the plaintiff to specifically identify the monies allegedly converted." Filing 24 at 6 (citing *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 896 n. 6 (D. Minn. 2013)). Defendants also assert that Finocchiaro must allege "how the Defendants wrongfully asserted control over the specific and identifiable sum of money" and "that [Finocchiaro] had a right to immediate possession of said sum of money at the time of the conversion." Filing 24 at 6–7.

Defendants argue that Finocchiaro fails to do this because "[t]he Amended Complaint . . . never identifies a specific amount" of money that was allegedly converted. Filing 24 at 7. Additionally, Defendants assert that "the Amended Complaint contains no allegations about when the unspecified funds were provided, nor the circumstances under which the Defendants allegedly came into possession of the funds." Filing 24 at 7. According to Defendants, "Ultimately, because [Finocchiaro] cannot identify and describe a sum of money capable of being converted, his claim for conversion should be dismissed." Filing 24 at 7.

Finocchiaro responds that "Defendants converted over $2 million in cash that was delivered to Chad McMahon" "over a period of 41 months." Filing 27 at 3. Finocchiaro also states that the Amended Complaint "alleges that McMahon was given these funds for the operation of the business" and that the "funds were not used for the operation of the business and McMahon refused to return [the] funds." Filing 27 at 3. Finocchiaro argues that those allegations are

"certainly enough to satisfy the notice pleading requirements" and that the details Defendants argue are required at this stage of litigation "are issues for discovery." Filing 27 at 4.

In reply, Defendants argue that discovery cannot cure Finocchiaro's failure to "specifically identify the allegedly converted funds" and that the arguments Finocchiaro raises in his response brief are unavailing, as they do not sufficiently identify when or how the conversion occurred. Filing 28 at 4–5.

3. *Finocchiaro's Conversion Claim States a Plausible Claim for Relief*

The Nebraska Supreme Court has explained,

> We have defined tortious conversion as any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights. And our case law makes clear that in order to maintain an action for conversion, the plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion.

*United Gen. Title Ins. Co. v. Malone*, 858 N.W.2d 196, 211 (Neb. 2015) (citations omitted); *Baye v. Airlite Plastics Co.*, 618 N.W.2d 145, 152 (Neb. 2000). "In other words, 'the essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property." *Zimmerman v. FirsTier Bank, N.A.*, 585 N.W.2d 445, 452 (Neb. 1998) (quoting *Terra Western Corp. v. Berry & Co.*, 295 N.W.2d 693, 696 (Neb. 1980)). Conversion occurs when the defendant "wrongfully assert[s] dominion" over the plaintiff's property. *Id.* (quoting *Ochs v. Makousky*, 547 N.W.2d 136, 139 (Neb. 1996)). The exercise of dominion over the plaintiff's property is conversion if it "deprives the owner of his property permanently or for an indefinite period of time." *Peterson v. Homesite Indem. Co.*, 840 N.W.2d 885, 894 (Neb. 2013).

"Nebraska recognizes money is different than other chattel, as it is intended to pass quickly from hand to hand and possession represents right and title thereto," with respect to actions for conversion. *CI Oakhurst v. Com. State Bank of Wausa*, 8:13CV340, 2014 WL 12605520, at *2 (D.

Neb. Mar. 31, 2014). However, "[m]oney may be the subject of conversion where it is earmarked or specially designated, *State v. Omaha Nat'l Bank*, 81 N.W. 319, 321–22 (Neb. 1899), or where the defendant wrongfully obtained it from the plaintiff, *Ochs v. Makousky*, 547 N.W.2d 136, 139 (Neb. 1996)." *Malone v. Kantner*, No. 4:12–CV–3190, 2015 WL 5156861, at *15 (D. Neb. Sept. 2, 2015). In *Omaha National Bank*, the Nebraska Supreme Court stated that the money at issue could form the basis of a conversion claim because it was earmarked. *Omaha Nat'l Bank*, 81 N.W. at 321–22 ("That the jury would be justified in finding from the evidence that . . . [the warrant] was issued to reimburse the sinking fund, hardly admits of doubt."). Similarly, another judge of this Court found facts "sufficient to state a claim for conversion" under Nebraska law where the plaintiff, mistakenly believing it was obligated on certain loans, paid $245,862.59 towards its mistaken obligations and the defendant bank that received such payments refused to return them. *CI Oakhurst*, 2014 WL 12605520, at *2. However, a separate case decided by another judge of this Court stated that "funds allegedly lost as a result of [the defendants'] self-dealing transactions; funds allegedly lost as a result of excessive administrative fees; and funds that [the defendants] allegedly pledged as collateral to Wells Fargo to purchase Custom Dairy" did not "constitute 'property' subject to conversion under Nebraska law" because the plaintiffs did "not produce[ ] evidence showing these funds were held separately from the fungible money that [the defendants] managed on behalf of [their company]." *Malone*, 2015 WL 5156861, at *15.

Finocchiaro has plausibly alleged a claim for conversion. Finocchiaro alleges that he contributed over $2,000,000 in cash over the course of 41 months and specifically designated the money to be used for "operational expense." Filing 18 at 3, 12 (¶¶ 19, 85). Much like *Omaha National Bank*, Finocchiaro alleges that McMahon knew the money Finocchiaro personally contributed was not fungible but was designated towards a particular purpose, operational expense,

in that "McMahon repeatedly assured Finocchiaro that the money he was giving to McMahon (including over $2,000,000 in cash) was being deposited and used for business." Filing 18 at 3, 6, 12 (¶¶ 19, 36, 86); *see Omaha Nat'l Bank*, 81 N.W. at 321–22. Finocchiaro alleges that McMahon wrongfully deprived him of his property in that Finocchiaro contributed the funds specifically for the purpose of funding business operations, and McMahon allegedly put those funds to use outside of that designated purpose. Filing 18 at 3, 6, 12 (¶¶ 19, 36, 86); *Zimmerman*, 585 N.W.2d at 452 ("In other words, 'the essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property."); *CI Oakhurst*, 2014 WL 12605520, at *2.

The thrust of Defendants' argument against Finocchiaro's claim concerns the Amended Complaint's failure to plead a specific and identifiable sum of money. *See* Filing 24 at 7; Filing 28 at 4. However, Nebraska caselaw only demands that money be "earmarked or specially designated," not that an exact and identifiable sum be alleged, to show that the owner was wrongfully deprived of property. *See Malone*, 2015 WL 5156861, at *15 (citing *Omaha Nat'l Bank*, 81 N.W. at 321–22); *Zimmerman*, 585 N.W.2d at 452. On the allegations described above, Finocchiaro plausibly alleges a conversion claim. *Christopherson*, 33 F.4th at 499 (saying "[a] claim is plausible when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'").

## III. CONCLUSION

Finocchiaro's fraud and conversion claims survive Defendants' Joint Motion to Dismiss because Finocchiaro plausibly asserts a personal stake in both claims, Finocchiaro's fraud claim satisfies Rule 9(b)'s heightened pleading requirements, Defendants do not assert that Finocchiaro's fraud claim should be dismissed on the basis of failure to state a claim, and Finocchiaro's conversion claim plausibly states a claim to relief.

Upon the foregoing,

IT IS ORDERED:

1. Defendants' Joint Motion to Dismiss, Filing 23, is granted in part and denied in part;
2. Finocchiaro's first, third, fourth, fifth, seventh, and eighth causes of action are dismissed; and
3. Finocchiaro's second and sixth causes of action remain.

Dated this 22nd day of January, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge